**UNITED STATES of America**

v.

**Luis GOMEZ, Appellant.**

**No. 86–5029.**

United States Court of Appeals,
Third Circuit.

Argued July 21, 1987.

Decided Oct. 23, 1987.

John F. McMahon (argued), Federal Public Defender, Newark, N.J., for appellant.

Samuel A. Alito, Jr., U.S. Atty., Marion Percell (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges, and BRODERICK, District Judge *.

SLOVITER, Circuit Judge.

This appeal concerns the district court's obligation under Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure to make findings as to alleged factual inaccu-

racies in a defendant's presentence investigation report. We must determine whether that obligation applies when the defendant's allegation is not that there is factual inaccuracy but that inaccurate factual inferences are likely to be drawn from the report's presentation of concededly accurate facts.

## I.

In May 1985, Luis Gomez was arrested at his home. The arresting officers found in Gomez' apartment $55,000 in a suitcase, a scale, and records of drug transactions. Subsequently, Gomez and four others were indicted on three counts charging conspiracy to distribute two kilograms of cocaine in violation of 21 U.S.C. § 846, distribution of one-quarter kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute one-quarter kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1). In October 1985, Gomez pled guilty to the count charging possession. Under the terms of his plea agreement, the remaining two counts were dismissed.

In December 1985, Gomez appeared before the district court for sentencing. The court confirmed that defense counsel had reviewed the presentence report and asked whether counsel or Gomez had discovered any errors. Counsel responded: "No, your Honor. We have perhaps an objection to some of the comments in the report, which I'll address in a moment. However, I don't find any errors that the court is referring to." App. at 28. Counsel and Gomez signed the form attached to the report which states that counsel and client have reviewed the report, found it "complete and accurate and have no additions or revisions to suggest."

Counsel did complain about the report's "characterization ... that this defendant bears the highest level of responsibility vis-a-vis the other defendants in this case." App. at 29. The court then noted that Gomez had supplied the cocaine which had been sold to the undercover federal agents

---

* Hon. Raymond J. Broderick, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

and that $55,000 had been found in Gomez' apartment. Counsel conceded these facts, but reiterated his belief that they did not justify treating Gomez "any differently than any of the other defendants in this case with respect to level of culpability." App. at 32. In this context, counsel made clear his contention that the money, scale and records were not the property of Gomez and that Gomez had received only a $200 fee for his part in bringing the parties together and delivering the cocaine.

The court expressed its belief that Gomez was more culpable because he had supplied the cocaine and "[w]ithout the cocaine, there is no sale." App. at 33. After additional colloquy, the court concluded that counsel and the court had "a philosophical difference ... as to who was more culpable; the fellow who supplies the drugs or the negotiators." App. at 38. Counsel agreed. Thereafter, following counsel's submission of documents on Gomez' behalf and Gomez' own statement, the court imposed a sentence of nine years' imprisonment with a special parole term of three years. Gomez appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II.

When a defendant disputes facts included in a presentence report, Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure requires a sentencing court to resolve those disputes or to determine that it will not rely on the disputed facts in sentencing.[1] Any findings or determinations made by the court must be appended to the report before it is sent to either the Bureau of Prisons or the United States Parole Commission. Gomez argues that because the district court failed to hold a hearing and make findings of fact to resolve factual disputes raised by his counsel,

his sentencing violated his procedural rights under Rule 32(c)(3)(D).

We first consider the government's contention that failure to request a hearing in the district court is dispositive of the issue on appeal. The government relies on our prior decision in *United States v. Matthews*, 773 F.2d 48, 51 (3d Cir.1985), where we stated that when "defendant had an adequate opportunity to examine and correct contraverted information ... [c]ounsel cannot ask this court to vacate his client's sentence when counsel failed to make a proper request for an evidentiary hearing as to the presentence report." *Id.* (citation omitted).

The *Matthews* situation is distinguishable from that before us because, as we noted there, the district court had followed Rule 32(c)(3)(D)(ii) when it explicitly assured the defendant that it would not consider the disputed allegations in imposing sentence. 773 F.2d at 50. Under those circumstances, the Rule does not require an evidentiary hearing to resolve the disputed facts because a hearing on facts not taken into consideration by the court would be an exercise in futility.

In this case, unlike *Matthews*, the district court did not explicitly determine that it would not consider the controverted allegations. Rule 32(c)(3)(D) is phrased in mandatory language. If the district court fails to make findings as to disputed facts, it must make a determination that those disputed facts will not be taken into account. The Rule puts that obligation on the court. Therefore, defendant's failure to request an evidentiary hearing is not dispositive of the issue raised by the appeal with respect to the sentencing procedure followed by the district court.

We must therefore consider whether there are any inaccurate facts that were

---

1. The Rule states:
   If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report ... the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter

controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Fed.R.Crim.P. 32(c)(3)(D).

controverted by defendant and, even if there are not, whether the procedure required by Rule 32(c)(3)(D) is triggered because accurate facts were presented in the presentence report in such a way that they are likely to lead to an allegedly inaccurate factual inference.

Gomez concedes that there is no factual inaccuracy in the following sentence appearing at page 1–3 of his presentence report: "Gomez was arrested later that day at his home and a search of premises revealed a scale used to weigh drugs, narcotics records reflecting $130,000 in transactions, and a brown suitcase containing $55,000 in cash." On the other hand, at the outset of the sentencing hearing Gomez' counsel objected to the characterization by the government in the report "that this defendant bears the highest level of responsibility vis-a-vis the other defendants in this case." App. at 29. He stated, "I don't want the Court to treat this defendant as if he is some kind of drug dealer, which he's not." App. at 36. His counsel vigorously controverted that the money and the narcotics records belonged to Gomez. He stated at the sentencing hearing:

> The items found—the money that was found in his apartment he told me from the very beginning was not his. He didn't even know what was in it. When it was opened up in his presence—it had to be cut open—he was just as shocked when—as the agents when it turned out to be a lot of money.
>
> THE COURT: He was shocked?
>
> MR. MANDEL: Shocked. He was obviously known to other individuals and was being used by other individuals. They found some papers indicating drug records in the apartment.
>
> My client from the very beginning was willing to submit to exemplars to prove this was not his handwriting. He never wrote those drug records. Someone else obviously was using his apartment.

App. at 35–36. Counsel also contested any inference of a connection between the scale found in Gomez' apartment and any use of it by Gomez as part of a drug operation:

> THE COURT: What was the scale being used for?
>
> MR. MANDEL: First of all, the scale had never been used. Any analysis or examination of the scale indicated it was brand-new and never been used. It's obvious someone was using his apartment for the purpose of storing various items related to drugs.

App. at 38.

The court explained its conclusion as to culpability as follows:

> THE COURT: But your client sold drugs.
>
> MR. MANDEL: He's here for sentencing on that and does not contest that.
>
> THE COURT: Then you and I have a philosophical difference, essentially, and the government has one as to who was more culpable; the fellow who supplies the drugs or the negotiators. That's essentially what it comes down to, is it not?
>
> MR. MANDEL: I suppose so.
>
> THE COURT: We have a philosophical difference in that regard.

App. at 38.

The government argues that the district court was entitled to draw reasonable inferences as to Gomez' level of culpability from the undisputed fact that Gomez was the seller of the cocaine. We agree that nowhere in the sentencing transcript did the district court state that it relied on the inference that Gomez was the owner of the cash and narcotics records in imposing sentence. We also agree that it appears that the court concluded that Gomez was the most culpable solely because he had supplied the cocaine. Moreover, we believe that is a permissible conclusion from the facts.[2]

Nonetheless, we cannot agree with the government that the presentence report contained no inaccuracy of the type that implicates Rule 32(c)(3)(D). The Report states, at page 1–4, that "[a]ccording to the Government the highest level of culpability

---

**2.** For this reason, we reject Gomez' argument that his sentence was improperly disproportion- ate to the sentences imposed on the other four co-defendants.

in this case is attributed to Luis Gomez who was the source of supply of the cocaine. He was found to possess $55,000 cash in his premises and narcotic records reflecting $130,000 in drug transactions." Thus, despite the fact that the report never explicitly states that Gomez was the owner of the cash and narcotics records, we cannot discount the likelihood that the two sentences placed one after the other suggest that Gomez had "the highest level of culpability" because the materials found in his apartment, which are those of a drug dealer, belonged to him. Gomez controverted this factual inference, and therefore the district court was bound to follow the procedure set forth in Rule 32(c)(3)(D).

Rule 32(c)(3)(D) is designed not only to insure the accuracy of the report for the sentencing judge but also for the Bureau of Prisons and the Parole Commission to whom it is sent. We have recently recognized the importance of the presentence report to parole determinations and have stated that "the rule effectively mandates that the court not mislead prison or parole officials by indicating reliance on disputed and unresolved issues of fact." *United States v. Katzin*, 824 F.2d 234, 239 (3d Cir.1987).

The statements of culpability in Gomez' presentence report coupled with the statements regarding the cash and drug records are likely to lead parole or prison officials to infer that Gomez had major involvement in drug transactions and was the owner of the cash and records found in his apartment, and that the district court endorsed such factual inferences. As *Katzin* makes clear, this is exactly the type of occurrence that Rule 32(c)(3)(D) is intended to avoid. *See also* Note, *How Unreliable Factfinding Can Undermine Sentencing Guidelines*, 95 Yale L.J. 1258, 1266, 1274–78 (1986).

Where the fact at issue is one that would normally affect the sentencing decision, subsequent users of a presentence report

are likely to infer that the judge credited that fact unless the judge states otherwise. Here, it is very likely that, in the absence of further clarification from the trial judge, subsequent readers of Gomez' presentence report will conclude that the judge credited the suggestion that he was the proprietor of a drug enterprise.

The district court failed to follow the procedure mandated by Rule 32(c)(3)(D). If it chose not to make findings as to the alleged inaccurate factual inference of ownership of the cash and the narcotics records, and indirectly of Gomez' status as a drug dealer, it was required to make an explicit determination that it would not rely on any such disputed inferences. This would not unduly burden the district court because the determination is required only when defendant objects to a factual inference. Compliance with the Rule simply requires the court to append "a record of its determinations to the [presentence report] to prevent future readers from assuming judicial approval of the controverted facts," *Katzin*, 824 F.2d at 239, or in this case controverted inferences. *See also United States v. Mays*, 798 F.2d 78, 81 (3d Cir.1986). We will therefore remand to give the district court an opportunity to do so.[3]

We reject Gomez' additional argument that his sentencing violated his due process rights. He has failed to show that "misinformation of a constitutional magnitude [has] been given to the district court" and that "that misinformation [has] been given specific consideration by the sentencing judge." *United States v. Matthews*, 773 F.2d at 51.

### III.

For the above reasons, we will vacate the sentence imposed by the district court and remand so that the district court may complete the record by making the findings required by Fed.R.Crim.P. 32(c)(3)(D)(i) or the determination required by Fed.R.

---

**3.** Of course, if the district court elects not to make such a determination and instead chooses to rely on any disputed inference, it must determine whether a hearing is necessary to support

findings as to the disputed inferences. Any findings made must then be attached to the presentence report.

Crim.P. 32(c)(3)(D)(ii), and appending a written record of such findings or determination to the presentence investigation report. On remand, the court may determine if it will be necessary to reopen the sentencing hearing or if it can follow our mandate on the basis of the prior record.