**UNITED STATES of America**

v.

**Jose C. BLANCO, Appellant.**

No. 89-5167.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
July 27, 1989.

Decided Sept. 15, 1989.

William A. Fetterhoff, Fetterhoff & Zilli,
Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., William A.
Behe, Asst. U.S. Atty., Harrisburg, Pa., for
appellee.

Before GIBBONS, Chief Judge,
HUTCHINSON, Circuit Judge and
REED, District Judge *.

OPINION OF THE COURT

GIBBONS, Chief Judge:

Jose C. Blanco appeals from a judgment
of sentence imposed following his guilty
plea to charges of conspiracy, 21 U.S.C.
§ 846, cocaine distribution, 21 U.S.C.
§ 841(a), and income tax evasion, 26 U.S.C.
§ 7206(1). The indictment in which he was
charged with these offenses also accused
several other alleged co-conspirators. Pri-
or to sentence he moved for disclosure of
the presentence investigation reports on
four co-conspirators who had previously
been sentenced. This motion was denied.
He also moved to correct alleged inaccura-
cies in his own presentence report. The
district court's treatment of that motion is
discussed in detail hereafter. Blanco con-
tends that he should be resentenced. We
conclude that the district court did not
abuse its discretion in denying Blanco's
motion for discovery of the presentence
reports on other defendants. We conclude
that noncompliance with Fed.R.Crim.P.
32(c)(3)(D) requires that Blanco's sentence
be vacated, and the case remanded for fur-
ther proceedings.

A.

The Discovery Motion

■ The co-defendants whose presen-
tence reports Blanco moved to discover all
were apprehended, cooperated, and entered
guilty pleas during the four year period in
which Blanco remained a fugitive. The
motion advanced no reason why informa-
tion in those reports would add significant-
ly to what Blanco already knew with re-

* Honorable Lowell A. Reed, Jr., United States
District Judge for the Eastern District of Penn-
sylvania, sitting by designation.

spect to factors legitimately bearing on his sentence. There is a general presumption that the courts will not grant third parties access to the presentence reports of other individuals. *United States Department of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 1613, 100 L.Ed.2d 1 (1988). Blanco's argument does not rest on any specific showing of the need for disclosure in the interest of justice, but on opposition to the general policy of nondisclosure. The court did not abuse its discretion in refusing to depart from the general practice. We are not free to impose a different general practice.

### B.

### The Motion to Correct Inaccuracies

■ Mr. Blanco alleged inaccuracies in his own presentence report as follows:

1. At page 1, paragraph 3, 3 lines from the bottom, "two kilograms" shall be amended to "one kilogram".

2. At page 7, paragraph 2, 13 lines from the top of the page "about seven kilograms" shall be amended to "5.53 kilograms".

3. At page 4, paragraph 1, after the second sentence four new sentences shall be added: "There were three participants in the robberies. Mr. Blanco served as the lookout and driver. The other two men entered the premises to perform the robberies, and one of those men displayed the .45 caliber handgun. The gun was never fired, and no injuries otherwise resulted."

4. At page 2, paragraph 2 after the first sentence in that paragraph a new sentence shall be added that, "There is no evidence that any of the drugs seized had in fact been cut." Additionally, in the second sentence of that paragraph the word "shortly" shall be deleted and the phrase "within 12 hours or less" shall be inserted.

5. At page 2, paragraph 2 a new sentence shall be added immediately following the weight and purity columns that "the average purity of the cocaine originating with Mr. Blanco and seized by the Government was therefore 51.5%."

At a hearing on the motion to correct these inaccuracies the following colloquy occurred:

MR. FETTERHOFF: Good morning, Judge. Judge, we do have a motion outstanding which I filed on February 15 to correct the presentence report.

THE COURT: Well, Mr. Ruth, the probation officer who prepared the report, wrote me a letter yesterday. I assume you received a copy.

MR. FETTERHOFF: Yes.

THE COURT: I don't know that anymore than—I'm going to direct that a copy of Mr. Ruth's letter be attached to the presentence report. I certainly don't think that there was any conscious effort to make it appear that Mr. Blanco held the gun. I think the fact reported in the report was that the gun was used in the robbery and I let it rest at that.

MR. FETTERHOFF: Well, I don't mean to interrupt. I'm not interested in the motives of the probation office, although I am—

THE COURT: Well, you certainly—

MR. FETTERHOFF: Well, then I say again I think that that sentence was irresponsibly drafted. I'm sorry to say that. I think that's inherent.

THE COURT: Well, I think irresponsible is strong language.

MR. FETTERHOFF: Well, it was all in a single sentence, the whole case summarized between commas, and the gun appeared very plainly to have been used by Mr. Blanco personally.

THE COURT: That's how you read it.

MR. FETTERHOFF: The document is going to become a principal document relied upon by the Parole Commission at a later determination, and that's why I think Mr. Blanco has a legitimate interest to have it corrected.

THE COURT: Well, I will indicate on the record that we direct that the reference to that crime be corrected to indicate that a handgun was used. There were other defendants involved in the case. Now, you know, I wasn't involved

in the case, so I don't know who used the gun.

MR. FETTERHOFF: Well, see, the point is if there was not sufficient evidence to the probation office to determine who used the gun among three defendants or even what role Mr. Blanco played, then it ought not to have been inserted in that fashion at all rather than inserted in a fashion which could lead an objective reader knowing nothing else about the case to conclude that Mr. Blanco had it.

THE COURT: Well, I think it should have been included that a handgun was used, in fact, a handgun was used; and I am certainly willing to indicate Mr. Blanco denies that he used the handgun; and I think that's taken care of by the letter of February 22 written by Mr. Ruth in which he said—I don't know if he referred to that or not. Well, I'll ask the—I'll ask that that matter be cleared up and amended.

MR. FETTERHOFF: I don't know if—I would like to offer the presentence report as an exhibit in the event that it is necessary.

THE COURT: Sure.

MR. FETTERHOFF: Which would be Defendant Blanco's Sentencing Exhibit No. 1.

THE COURT: Okay. Very well.

MR. FETTERHOFF: Just for the record, Your Honor, do I understand that the balance of the motion is denied?

THE COURT: Well, let me make a statement on the record. I'm not making any finding about the quantities. I have no basis to do that. I don't think that the probation office would make any finding. I think it was indicated that the quantities or what the government may use is based on the best evidence available to it.

Now I think it's up to the probation office—the parole people to make any determination in connection with that. We haven't had a trial. There is no evidence from which I can make a finding. Mr. Behe, is that your understanding as well?

MR. BEHE: My understanding is what the probation office has indicated here is the prosecution's version as to the amount of drugs but not their own independent finding as to how much was involved.

THE COURT: Right, and I recognize that that has been disputed here. This is not the place, it seems to me, for that dispute to be raised other than put it on the record.

Thereafter Blanco was sentenced on the conspiracy count to 15 years and a $25,000 fine; on the cocaine distribution count to 15 years and a $25,000 fine; on those two counts to a special parole term of 3 years; and on the tax evasion count to 3 years. The prison terms run concurrently.

Federal Rule of Criminal Procedure 32(c)(3)(D) requires a sentencing judge to make findings as to alleged factual inaccuracies in a defendant's presentence investigation report or to explicitly disclaim reliance on the controverted facts. The rule, as applied to offenses committed before Nov. 1, 1987, provides:

(D) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

This rule requires that the determination or disclaimer be appended to the presentence report because the report is subsequently used by prison officials for confinement purposes and by the Parole Commission for purposes of release. *See United States v. Katzin,* 824 F.2d 234, 238 (3d Cir.1987). The Notes of Advisory Committee on Rules provides:

### Rule 32(c)(3)(D)

Subdivision (c)(3)(D) is entirely new. It requires the sentencing court, as to each matter controverted, either to make a finding as to the accuracy of the challenged factual proposition or to determine that no reliance will be placed on that proposition at the time of sentencing. This new provision also requires that a record of this action accompany any copy of the report later made available to the Bureau of Prisons or Parole Commission.

As noted above, the Bureau of Prisons and the Parole Commission made substantial use of the presentence investigation report. Under current practice, this can result in reliance upon assertions of fact in the report in the making of critical determinations relating to custody or parole. For example, it is possible that the Bureau or Commission, in the course of reaching a decision on such matters as institution assignment, eligibility for programs, or computation of salient factors, will place great reliance upon factual assertions in the report which are in fact untrue and which remained unchallenged at the time of sentencing because defendant or his counsel deemed the error unimportant in the sentencing context (e.g., where the sentence was expected to conform to an earlier plea agreement, or where the judge said he would disregard certain controverted matter in setting the sentence).

The first sentence of new subdivision (c)(3)(D) is intended to ensure that a record is made as to exactly what resolution occurred as to controverted matter. The second sentence is intended to ensure that this record comes to the attention of the Bureau or Commission when these agencies utilize the presentence investigation report. In current practice, "less than one-fourth of the district courts (twenty of ninety-two) communicate to the correctional agencies the defendant's challenges to information in the presentence report and the resolution of these challenges." Fennell & Hall, supra, at 1680.

New subdivision (c)(3)(D) does not impose an onerous burden. It does not even require the preparation of a transcript. As is now the practice in some courts, these findings and determinations can be simply entered onto a form which is then appended to the report.

Given these post-sentencing uses of the presentence investigative report, courts have strictly enforced the mandatory language of this rule requiring that the sentencing judge either make a finding as to the controverted fact or disclaim reliance on the fact for sentencing. *See e.g. United States v. Bradley*, 812 F.2d 774, 782 (2d Cir.1987) (Mandatory character of Fed.R. Crim.P. 32(c)(3)(D) "directs the sentencing judge either to make findings with respect to the alleged inaccuracies in the report or explicitly to state that he did not consider the contested matters in his determination of sentence."); *United States v. Monaco*, 852 F.2d 1143, 1148 (9th Cir.1988) ("Strict compliance with the Rule is required, and 'failure to comply will result in remand' ") (quoting *United States v. Sharon*, 812 F.2d 1233, 1234 (9th Cir.1987), quoting *United States v. Edwards*, 800 F.2d 878, 881 (9th Cir.1986)). Furthermore, the rule requires that the factual determination or disclaimer be attached as an appendix to the report.

In *United States v. Gomez*, 831 F.2d 453, 455 (3d Cir.1987), this court stated:

Rule 32(c)(3)(D) is phrased in mandatory language. If the district court fails to make findings as to disputed facts, it must make a determination that those disputed facts will not be taken into account.

In *Gomez*, this court held that Rule 32(c)(3)(D) is triggered by a presentence report which contains concededly accurate facts which create an inaccurate factual inference. The Gomez report stated:

[a]ccording to the Government, the highest level of culpability in this case is attributed to Luis Gomez who was the source of supply of the cocaine. He was found to possess $55,000 cash in his premises and narcotic records reflecting $130,000 in drug transactions.

*Id.* at 456–57. We found that this passage created the inference that Gomez was involved in drug transactions and that the money and narcotic records found in his apartment were his. Mr. Gomez contested this inference and the sentencing judge was under an obligation to make the required finding or remand.

Two of Mr. Blanco's alleged factual inaccuracies are similar to the *Gomez* case in that they allege that the presentation of accurate facts creates an inaccurate inference. Mr. Blanco alleges in the fourth proposed amendment that there is an improper inference created that the seized drugs had been cut. Page 2, paragraph 2 of the presentence report provides:

> The only drugs seized in this case were obtained in searches at Renda's used car business and at his residence where Renda also had drug cutting materials. On November 10, 1981 *shortly* after he returned from Melbourne, Florida, about 1.4 pounds of cocaine in four separate plastic bags were seized. Laboratory analysis of the cocaine showed the following:
>
> | Net Weight | Strength | Total Net |
> |---|---|---|
> | 62.1 grams | 55.4% | 34.4 grams |
> | 97.1 grams | 49.3% | 47.7 grams |
> | 139.2 grams | 51.2% | 71.3 grams |
> | 139.4 grams | 56.3% | 78.5 grams |
> | | | 231.9 grams |

When Renda was arrested on March 25, 1982 shortly after returning from Melbourne, about one pound of cocaine was seized at his residence, which was analyzed as follows:

> | Net Weight | Strength | Total Net |
> |---|---|---|
> | 439.3 grams | 45.3% | 199 grams |

(Emphasis added). Reasonable minds may differ as to whether an inaccurate inference is created by page 2 of the presentence report. Nevertheless, the sentencing judge should have addressed the alleged inaccuracy and appended his finding or disclaimer to the report.

Alleged inaccuracy 3 creates an improper inference that Mr. Blanco used a gun in the commission of a prior crime. Page 4 of the presentence report provides:

> The defendant was represented by Charles Snowden, Esquire, in these cases. The offenses were committed in 1972, at which time Mr. Blanco was on probation supervision, and involved the robbery of businesses with a .45 calibre handgun. The defendant was released from custody on parole in April 1978.

The sentencing judge addressed this alleged inaccuracy at sentencing:

> THE COURT: Well, I think it should have been included that a handgun was used, in fact, a handgun was used; and I am certainly willing to indicate Mr. Blanco denies that he used the handgun; and I think that's taken care of by the letter of February 22 written by Mr. Ruth in which he said—I don't know if he referred to that or not. Well, I'll ask the— I'll ask that that matter be cleared up and amended.

The judge merely finds that the underlying facts are accurate. He fails to address the inference that Mr. Blanco used a gun. He determines to attach the Ruth letter to the presentence report. The letter from Robert A. Ruth, U.S. Probation Officer, which we have examined, does not address the inference that Mr. Blanco used a gun in the commission of a robbery. It merely states that there is a lack of information as to Mr. Blanco's participation in the robbery offenses. Mr. Ruth writes:

> Defense Counsel implies that the probation officer attempted to withhold or manipulate information concerning Mr. Blanco's prior conviction for robbery. This is not the case. During a telephone discussion with Defense Counsel subsequent to the disclosure of the presentence report, the probation officer advised Defense Counsel that there was no further relevant information available to the probation officer concerning Mr. Blanco's participation in these offenses. Defense Counsel has either reported the defendant's comments concerning the offenses or has obtained additional documentation to which the probation officer does not have access.

Appending this letter to the presentence report does not satisfy Fed.R.Crim.P. 32(c)(3)(D). The sentencing judge must either make a finding or a disclaimer of

reliance on controverted facts and append the same to the presentence report.

Proposed amendments one and two to the presentence report allege that certain quantities of cocaine listed in the report are inaccurate. As to amendment two, the government argues that Mr. Blanco is estopped from employing Fed.R.Crim.P. 32 to correct a factual inaccuracy because he pled guilty· to count I of the indictment which listed sufficient amounts of cocaine to support the presentence report allegation that Mr. Blanco distributed about seven kilograms of cocaine from 1980 to March 1982. Mr. Blanco contends it was exactly 5.53 kilograms.

The indictment to which Mr. Blanco pled guilty in open court lists the following quantities in count I:

Paragraph 3:    Several Ounces of Cocaine

Paragraph 5:    Several Ounces of Cocaine

Paragraph 7:    Approximately one (1) pound of Cocaine

Paragraph 9:    Several Ounces of Cocaine

Paragraph 18:    Approximately one-half kilogram of Cocaine

Paragraph 21:    Approximately two (2) kilograms of Cocaine

Paragraph 24:    Approximately two (2) kilograms of Cocaine

Paragraph 27:    Approximately one (1)—two (2) kilograms of Cocaine

Paragraph 28:    Approximately one (1) kilogram of Cocaine

Paragraph 30:    Approximately ten (10) Ounces of Cocaine

Paragraph 31:    Approximately 1.2 pounds of Cocaine

The government argues that Mr. Blanco should not be allowed to make a plea bargain and then turn his sentencing hearing into a trial. However, Rule 32 does not require a trial as to controverted facts; it only requires a finding or disclaimer. In appropriate circumstances, the sentencing judge might be able to rely on the amounts or facts to which the defendant pled guilty.

However, in the present circumstances, it would be difficult to determine what the approximate amounts add up to. This court has no way of knowing the size of the rounding error employed in reaching those approximations. The report states "about 7 kilograms," Mr. Blanco argues that the accurate figure is 5.53 kilograms. Maybe 5.53 is about 7 when you compound rounding errors. While the indictment should be considered in determining the accurate amount (unless the amount is disclaimed), the indictment does not estop Mr. Blanco or preclude a finding or disclaimer pursuant to Fed.R.Crim.P. 32(c)(3)(D).

Mr. Blanco's fifth proposed amendment to the presentence report involves the purity of the cocaine seized. In his letter to the judge regarding the sentencing report, Probation Officer Ruth indicated that the government had no way of determining the purity of the cocaine and that the severity category for the offense, category 7, was determined by reference to quantity alone. *See* 28 C.F.R. § 2.20, Chapter 9.[1] The letter provides:

> In determining the Offense Severity Category, the total amount of drugs distributed is to be used if the purity is unknown. Since only about two pounds of cocaine distributed by Mr. Blanco was seized, and this was after it had been in the possession of Christopher Renda, the total amount of cocaine distributed by Blanco was used by the probation officer to determine the Offense Severity Category of seven. The probation officer notes that in addition to the 6.63 kilograms of cocaine distributed by Blanco to Renda, Blanco also distributed at least several ounces of cocaine to Paul Edwin Kuntz and was involved in the sale of 320 pounds of marijuana to Renda.

The government mischaracterizes Mr. Blanco's argument as an objection to the use of the quantity only formula, as opposed to the purity and quantity formula. Mr. Blanco simply argues that he is either entitled

---

1. Mr. Blanco points out that if the purity formula, rather than quantity alone, is used, then adjusting the purity would result in the offense falling within category 6 rather than 7.

to a finding or disclaimer as to purity. He is right.

As to each of the alleged inaccuracies, the government contends that Rule 32(c)(3)(D) was complied with because it is "clear" from the record that they were not relied upon in sentencing. The government reaches this conclusion by negative inference from the fact that the alleged inaccuracies are not explicitly listed as considerations by the judge. Rule 32 requires more. If a judge wishes to disclaim reliance on controverted facts, he must do so explicitly and append the same to the presentence report for future use.

Rule 32(c)(3)(D) should be applied literally. The procedure is simple. When a defendant alleges factual inaccuracies, the sentencing judge must make a finding or disclaim reliance thereon for sentencing, and then attach his determination or disclaimer to the presentence report.

The sentence must therefore be vacated and the case remanded for further proceedings consistent with this opinion. Those proceedings may include a certification to the effect that the court in fact disclaimed reliance on the alleged inaccuracies. If such a certification is made and appended to the presentence report for future use the vacated sentence may be reimposed without a hearing. Otherwise the district court must resentence Blanco in compliance with Rule 32.