**UNITED STATES of America, Appellee,**

v.

**KATZIN, Harry a/k/a "Porky", Appellant.**

**No. 86–1519.**

United States Court of Appeals, Third Circuit.

Argued Feb. 24, 1987.

Decided July 9, 1987.

Rehearing Denied Aug. 7, 1987.

Nicholas C. Harbist (argued), Asst. U.S. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Peter Goldberger (argued), Alan Ellis, Ellis and Newman, P.C., Philadelphia, Pa., for appellant.

Before WEIS, BECKER and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

When a defendant disputes facts included in a Pre-Sentence Investigation report (PSI), Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure requires a sentencing court to resolve those disputes or to determine that it will not rely on the disputed facts in sentencing.[1] The court must then append to the report a record of these findings or determinations before the Probation Office sends the report to the Bureau of Prisons or to the United States Parole Commission.[2]

In this case, we must decide whether Fed.R.Crim.P. 35(a) grants a district court jurisdiction to correct a sentence allegedly imposed in violation of these requirements. We conclude that it does. Then, turning to the merits, we must consider whether Rule

---

1. Fed.R.Crim.P. 32(c)(3)(D) provides:

   If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

2. The most important use of the PSI after sentencing is in connection with parole decisions. Under the Parole Commission's guidelines, a parole decision is based on a prisoner's total offense behavior and on personal background characteristics relevant to the prisoner's likelihood of recidivism. The PSI is generally considered to be the single most important source for this information.

32(c)(3)(D) requires the district court to provide a prisoner a hearing when a U.S. Probation Officer, after sentencing, provides information directly to the Parole Commission that was not included in the PSI. The information provided here, involving the amount and purity of methamphetamine distributed by the petitioner, is necessary for calculation of the prisoner's parole guidelines. Although we think that the better practice is for Probation Officers to include all information necessary to calculation of parole guidelines in the PSI so that defendants will have a full opportunity to challenge potentially prejudicial information, we conclude that the direct provision of information to the Parole Commission does not violate Rule 32.

Finally, we must decide whether the district court should have resolved disputed facts relevant to the defendant's parole guidelines because it had structured the sentence in reliance on a guideline range considerably below that projected in the Parole Commission's preliminary assessment. We conclude that no such findings were necessary *inter alia,* because under the facts of this case, the district court's denial of the Rule 35 motion clearly reflects the opinion that even the different guidelines should not alter the sentence. We therefore affirm the district court's denial of the Rule 35 motion.

### I. *Facts and Procedural History*

Harry Katzin was convicted by a jury on June 10, 1985 of conspiracy to distribute and two counts of distribution of methamphetamine. The Probation Office prepared a PSI describing the official version of the offense and estimating the range of incarceration under the Parole Commission's guidelines at 20–26 months. The PSI, however, provided no information about the amount of methamphetamine involved in the offenses or its purity. The district court held a sentencing hearing pursuant to Rule 32(c)(3)(A). Through counsel, Katzin objected to two relatively minor statements in the PSI. The sentencing judge declared that he would not rely on these statements, however, and he instructed Katzin to try to work out corrections of these claimed inaccuracies with the government before the PSI was sent to the Bureau of Prisons or Parole Commission. Apparently, the district court's nonreliance satisfied Katzin, for he did not pursue this matter after the hearing.

The court then announced its sentence. The court noted the parole guideline range of 20 to 26 months, but stated, "I think that the amount of jail time here should end up ... around four years." Determined to "structure[ ]" the sentence "around that basis," the court provided for a sentence of three consecutive four year terms plus a total of six years of special parole. This would make Katzin eligible for parole in four years. On appeal of the underlying conviction, this court summarily affirmed.

After sentencing, the Parole Commission requested the probation office to provide information not included in the PSI about the amount and purity of the methamphetamine. This information was necessary for the Commission to determine Katzin's guidelines. A probation officer replied with a letter relating the prosecutor's estimate that Katzin "was moving between 5 and 20 pounds per month of methamphetamine," on the basis of which the Commission provided Katzin with a "preliminary parole assessment" of 52 to 64 months. So far as we know, however, Katzin's first parole hearing has not taken place, so that the Commission may not yet have determined which guidelines actually apply to Katzin.

Because of the substantial difference between the guidelines projected by the PSI and those preliminarily assessed by the Parole Commission, Katzin filed a Rule 35 motion requesting a reduction of sentence. He also requested a hearing to rebut the accusations contained in the probation officer's letter. The district court denied both forms of relief and refused reconsideration. Katzin now appeals.

Katzin makes two related claims. He first argues that Rule 32(c)(3)(D), added in 1983 to prevent inaccurate factual information in the PSI from prejudicing a defend-

ant after sentencing, reflects a desire that information provided by probation officers to parole and prison officials be filtered through a judicial proceeding. If probation officers may provide information to parole officials after sentencing without judicial screening, asserts Katzin, they will effectively subvert this important reform.

Katzin also submits that the district court should have held a hearing because the court had relied on the estimated guidelines in structuring its sentence. Essentially, Katzin contends that if the sentencing judge relied on a mistaken parole estimate, he must reconsider his sentence; he must therefore hold a hearing to determine whether that previous parole estimate was or was not mistaken.

## II. *Jurisdiction*

The government meets Katzin's claims with a threshold objection that the district court had no jurisdiction under Rule 35 to consider Katzin's complaint of a violation of Rule 32(c). Under present federal criminal procedure, as the government points out, "the power to determine the length and conditions of an individual criminal's punishment is dispersed between the judicial and executive branches." *Diggs v. United States*, 740 F.2d 239, 246 (3d Cir. 1984). While the sentencing court retains jurisdiction under Rule 35 to reconsider or to correct its sentence, claims the government, that authority does not extend to interference with parole decisions by the executive. The executive's authority over parole decisions includes the authority to make factual findings in the determination of guidelines. *See generally Campbell v. United States Parole Commission*, 704 F.2d 106, 109–10 (3d Cir.1983) (Commission has broad discretion in making factual determinations relevant to parole); 28 C.F.R.

§ 219(c) (1986) (requiring Commission to resolve disputed facts by preponderance of evidence). Accordingly, claims the government, when alleged factual inaccuracies in PSI's affect only parole determinations, as they do here, a district court has no authority to correct them.

The government's argument, although phrased as one of jurisdiction, also has significance for judging Katzin's claim on the merits. In that context, as we discuss below, it has considerable merit. As a matter of jurisdiction, however, we believe the government's argument is incorrect.

Rule 35(a) provides that a court may correct an "illegal sentence" at any time and "may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." [3] The time provided is 120 days after receipt by the district court of a mandate issued upon affirmance of the judgment (or dismissal of the appeal).[4] In this case, Katzin does not claim that the district court imposed an "illegal sentence." (Illegal sentences are "essentially only those which exceed the relevant statutory maximum limits or violate double jeopardy or are ambiguous or internally contradictory." 8A J. Moore, Moore's Federal Practice ¶ 35.03[2], at 35–36 (2d ed. 1987)). Rather, Katzin claims that his sentence was imposed in an illegal manner.

Rule 32 on its face sets forth various legal requirements for the "manner" of imposing sentence. As a general matter, therefore, violations of Rule 32 should be cognizable under Rule 35. For example, pursuant to Rule 35(a) courts have corrected a sentence imposed in violation of a defendant's rights under Rule 32(a) to address the court or to have findings made about disputed facts. *See, e.g., United*

---

**3.** More fully, Rule 35 states:

(a) **Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) **Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or

probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal....

**4.** This court affirmed Katzin's conviction on February 7, 1986, and Katzin filed his Rule 35 motion within 120 days of that affirmance on June 5, 1985. Katzin's motion therefore satisfied the 120 day requirement of the rule.

*States v. Sparrow,* 673 F.2d 862, 864–65 (5th Cir.1982) (granting Rule 35 motion in part for failure of district court to address defendant at sentencing and to inquire if defendant wished to make statement as required by 32(a)(1)); *United States v. Velasquez,* 748 F.2d 972 (5th Cir.1984) (ordering resentencing on Rule 35 motion because of sentencing court's failure to resolve disputed issues of fact). We do not understand the government to claim that these cases were incorrectly decided but rather that because the impact of the alleged violation in this case falls entirely on the parole decision, Rule 35 provides no jurisdiction.

We agree with Katzin, however, that the 1983 amendments to Rule 32 impose some responsibilities on courts to protect the accuracy of the parole decision. Rule 32(c)(3)(D) requires courts to append a record of their findings or determinations about disputed information in the PSI before making it available to the Bureau of Prisons or the Parole Commission. *See supra* note 1. As the Advisory Committee note makes clear, the purpose of this rule is to protect the defendant from prejudicial effects on parole or prison custody decisions that may come from inaccuracies in the report:

> [T]he Bureau of Prisons and the Parole Commission made substantial use of the presentence investigation report. Under current practice, this can result in reliance upon assertions of fact in the report in the making of critical determinations relating to custody or parole.... The first sentence of new subdivision

(c)(3)(D) is intended to ensure that a record is made as to exactly what resolution occurred as to controverted matter. The second sentence is intended to ensure that this record comes to the attention of the Bureau or Commission when these agencies utilize the presentence investigation report.

■ These responsibilities to parole and prison decisionmaking are responsibilities imposed by Rule 32 on the sentencing process. The fact that these requirements were intended to prevent postsentence prejudice does not mean that Rule 35 provides no jurisdiction to correct them. On the contrary, the fact that the appending requirement of Rule 32(c) can only be fulfilled after the district court announces sentence suggests that Rule 35 jurisdiction is particularly necessary and appropriate. We therefore agree with and follow several other circuits that have accepted jurisdiction under Rule 35 to insure satisfaction of the Rule 32 requirements aimed at preventing post-sentence prejudice.[5] *See United States v. Santamaria,* 788 F.2d 824, 828–29 (1st Cir.1986) (ordering on Rule 35 motion that record of sentencing court's determinations be forwarded to prison and parole officials); *United States v. Castillo-Roman,* 774 F.2d 1280, 1284–85 (5th Cir. 1985) (same); *Kramer v. United States,* 788 F.2d 1229, 1230–32 (7th Cir.1986) (Rule 35(a) provides jurisdiction for order of resentencing because of sentencing court's failure to follow requirements of Rule 32(c)(3)(D)) in part because of impact on parole status).[6]

---

**5.** Because of our holding that Rule 35 provides jurisdiction for this case, we need not decide whether jurisdiction would also be appropriate under 28 U.S.C. § 2255. *Compare Charles Poor Thunder v. United States,* 810 F.2d 817 (8th Cir.1987) (Section 2255 jurisdiction appropriate for some alleged violations of Rule 32(c)(3)(D) undermining factual accuracy of PSI) *with Johnson v. United States,* 805 F.2d 1284, 1287 (7th Cir.1986) (Section 2255 provides jurisdiction for Rule 32 violation only if there is also violation of constitutional right to due process).

**6.** The government cites a number of cases to support its contention that the district court did not have jurisdiction, but none of these cases deal with jurisdiction under Rule 35. *United*

*States v. Mittelsteadt,* 790 F.2d 39 (7th Cir.1986), for example, dealt with a habeas corpus claim under 28 U.S.C. § 2255. Because the claimant made no attack on the validity of the sentence, the court held that jurisdiction was inappropriate. In contrast, the Seventh Circuit has held that Rule 35 provides jurisdiction to correct a violation of Rule 32(c)(3)(D). *See Kramer.*

In *United States v. Gleason,* 753 F.2d 83 (8th Cir.1985), also cited by the government, a prisoner petitioned the district court to order discovery of information the prisoner could then use in his parole hearing. Because the prisoner's two Rule 35 motions had been denied, and no case was pending in the district court, the court held that jurisdiction, if at all, must be premised on § 2255. As in *Mittelsteadt,* how-

### III. The Need for a Hearing Because of the Impact on the Parole Decision

On the merits, Katzin argues that the district court should have held a hearing and made findings of fact to resolve the dispute over the amount of methamphetamine with which Katzin was involved. Katzin claims that the failure to do so undermines the spirit of Rule 32(c)(3) because it permits the Probation Office to feed information to the Parole Commission necessary for calculation of its guidelines without the filtering mechanism of judicial review.

■ Katzin's claim has appeal. Although the Parole Commission must itself resolve factual disputes and has a mechanism for doing so, see 28 C.F.R. § 2.19(c), the reality is that prisoners have limited means of challenging facts relayed by the government. They rarely have the benefit of counsel, and parole officials necessarily rely on hearsay evidence. Obtaining the testimony of witnesses may be impossible. Certainly, the better practice is for a probation officer to put in the PSI all information necessary for a guideline determination so that a defendant will have a meaningful opportunity at the sentencing hearing to challenge the government's contentions on the facts that form the basis for the parole determination. Including the government's full version of an offense in the PSI will also permit defendants to verify the parole guideline projection already included routinely in the PSI. That opportunity for verification can thereby help prevent a sentencing court from structuring a sentence on the basis of inaccurate guidelines. Because probation officers routinely include a guideline projection as part of the PSI, they are already familiar with guideline calculations and the practice we recommend should not cause any particular burden.

■ We cannot, however, find any violation of Rule 32 here. The contents of a PSI are determined primarily by the needs of the court at "sentencing." [7] Nothing in Rule 32 requires that the PSI provide all the information necessary for a parole determination. Furthermore, although the rule effectively mandates that the court not mislead prison or parole officials by indicating reliance on disputed and unresolved issues of fact, the rule does not require that the district court actually resolve all disputes of fact. If the court determines that disputed information is not material to its sentencing decision, it need not make findings of fact or even admit testimony. See Rule 32(c)(3)(A) (court shall afford defendant an opportunity to introduce testimony "in the discretion of the court"); Rule 32(c)(3)(D) (court need not make findings if "matter controverted will not be taken into account in sentencing"). All it must do is attach a record of its determinations to the PSI to prevent future readers from assuming judicial approval of the controverted facts.

■ In this case, Katzin objects that because the PSI never included the disputed facts, the court had no opportunity to make findings. But the very fact that the court did not even have the information available to it demonstrates that it did not rely on the disputed facts in making the sentencing decision. This lack of reliance means that there was no prejudice to the actual sen-

---

ever, the prisoner did not attack the sentence itself, and so § 2255 could not provide jurisdiction.

The other cases cited by the government are equally inapposite. See United States v. Ursillo, 786 F.2d 66 (2d Cir.1986) (suggesting that Rule 32(c)(3)(D) does not provide independent basis of jurisdiction to challenge alleged inaccuracies in PSI any time after sentencing; explicitly distinguishing challenge under Rule 35); Maynard v. Havenstrite, 727 F.2d 439 (5th Cir.1984) (suit based on alleged inaccuracies in PSI does not provide jurisdiction under 28 U.S.C. §§ 1331, 1361, 1651, 2201–02 at least in absence of exhaustion of administrative remedies); United States v. Leath, 711 F.2d 119, 120 (8th Cir.1983) (no jurisdiction under 28 U.S.C. § 2255 or § 2241 for post-sentence motion to correct PSI), Solomon v. Elsea, 676 F.2d 282, 288–89 (7th Cir.1982) (deciding prisoner's challenge to parole commission's resolution of factual dispute on merits).

7. Rule 32(c)(2)(D) indicates this focus through its catch-all requirement that, in addition to certain mandatory requirements, the PSI include "any other information that may aid the court in sentencing...."

tencing decision. In addition, there could be no misleading of parole or prison officials because the disputed information did not come to them with any indication of judicial approval. The information is comparable to information that is included in the PSI but on which the district court determines not to rely. As Rule 32 permits parole and prison officials to receive information on which the sentencing court determines not to rely, so it must also permit these officials to receive information not presented to the court at all.[8]

### IV. *Reconsideration Because of Reliance on a Potentially Incorrect Parole Guideline Estimate*

Katzin claims that the district court should have held a hearing not only because of prejudice to the parole decision from the inaccurate information provided by the probation officer but also because the district court's reliance on a potentially incorrect parole guideline estimate may have improperly influenced the sentencing decision. In *Moore v. United States*, 571 F.2d 179, 183–84 & n. 7 (3d Cir.1978), we held that due process may require resentencing when the information on which the sentencing court may have relied in a PSI is mistaken or unreliable. The defendant in that case disputed an allegation in his PSI that he had beaten and shot many people. We remanded either for resentencing after resolution of the factual dispute or for a declaration by the district court that it had not relied on the disputed information at sentencing. *See also United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (sentencing on basis of materially untrue assumptions violates due process); *United States v. Baylin*, 696 F.2d 1030, 1042 (3d Cir.1982)

(same). Katzin argues that analogous principles require the district court to determine whether the previous parole estimate was correct because the district court imposed a twelve year sentence in the expectation that Katzin would actually serve a four year term. If the court had relied on a false estimate, asserts Katzin, due process requires resentencing.

A premise of Katzin's argument is that if the district court relied on incorrect guidelines, due process would require resentencing. In *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), the Supreme Court held that an incorrect understanding of the parole guidelines did not rise to the level of a "fundamental" sentencing error that justified relief under 28 U.S.C. § 2255. Read broadly, language in *Addonizio* might also suggest that a district court need never reduce a sentence when finding its prior parole expectation incorrect because the parole decision "has been committed by Congress ... to the discretion of the Parole Commission." *Id.* at 188. *Cf. Diggs*, 740 F.2d at 246 (120 day limit on court's jurisdiction to reduce sentence "serves chiefly to ensure that" this power "does not become a tool for overruling the Parole Commission"). The Court of Appeals for the Eleventh Circuit has interpreted *Addonizio* to preclude the claim that a sentence imposed on the basis of an incorrect view of the parole decision constitutes an "illegal sentence" providing jurisdiction under Rule 35(a). *United States v. Dean*, 752 F.2d 535 (11th Cir.1985). The *Dean* court distinguished reliance on a false "prediction" from reliance on a false "fact" and held that only the latter may constitute a violation of due process. *Id.* at 545.

**8.** In addition to the Probation Office, both defense counsel and the government are entitled to present their views and versions of events to the Parole Commission. The Judiciary and the Justice Department have provided forms (A.O. 337 and USA Form 792) to facilitate these communications. The development of these forms supports the view that Rule 32(c)(3)(D) is not intended to cause all information reaching the Commission to flow through a judicial filter.

Katzin contends that information coming from the Probation Office is different because the Probation Office is an arm of the courts. Rule 32, however, does not require courts to determine the accuracy of all probation officer's statements, rather only to notify future readers of PSI's when the court has not assented to disputed information. We therefore do not believe that Rule 32 aims to prohibit communications between probation officers and parole or prison officials.

*Addonizio* directly concerned only jurisdiction under 28 U.S.C. § 2255, which essentially provides jurisdiction only for matters traditionally cognizable under habeas corpus. *Dean* directly involved only jurisdiction to correct an "illegal sentence." In part because no time requirement limits either of these bases of jurisdiction, courts have invoked them only to correct "fundamental" errors. *See Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) (§ 2255 jurisdiction appropriate only to correct "a fundamental defect which inherently results in a complete miscarriage of justice" and jurisdiction over "illegal sentence" applies only to limited class of errors); *United States v. Cevallos,* 538 F.2d 1122, 1127–28 (5th Cir. 1976) (for sentence to be illegal, prejudice to defendant must be greater than for sentence to be illegally imposed).

■ Because Rule 35 provides jurisdiction to correct an "illegally imposed" sentence for only 120 days, *see* Moore, *supra,* a less significant error arguably may support relief on this basis, and *Addonizio* may not control.[9] We need not decide, however, whether under some circumstances a mistaken guideline assumption will require resentencing if requested in a timely Rule 35 motion.[10] The principle underlying *Moore* is that sentencing based on a mistaken factual assumption violates due process. In this case, Katzin does not contend that the district court based its sentence on a false estimate of what the guidelines should be. Katzin requests a hearing instead to prevent the Parole Commission from using incorrect guidelines. Even if we assume that reliance on incorrect guidelines may sometimes require resentencing, due process does not require that a court resolve factual disputes in advance to prevent the Parole Commission from making mistakes.

■ Furthermore, even if we assume that the "fact" relevant to Katzin's due process challenge is not what the guidelines should be but what the Commission is likely to select,[11] the facts in this case make clear that the district court rejected the relevance of the new guideline estimate. Before the district court, the parties agreed that a guideline estimate of 52 to 64 months now better reflects the Parole Commission's likely selection than the previous estimate. In the face of this agreement, Katzin's motion for a reduction of sentence presented the district court with a clear choice whether the new estimate called for a different sentence. The court's rejection of the motion can only mean that the different guideline projection did not alter the court's view of an appropriate sentence.

The reasons for that decision are plain in light of the district court's limited ability to tailor sentences precisely. Even if the Commission chooses the higher guideline estimate, a release decision at the bottom of the guidelines would release Katzin after only four months more than four years. With early release to a halfway house, release actually from prison could occur in four years precisely. A reduction in sentence to assure at most a four year period of incarceration, however, would require an enormous reduction in the period of parole supervision and would thwart the desire expressed by the district court for a lengthy period of parole. A reduction in sentence would also permit the Commission to release Katzin after considerably less than four years if Katzin successfully demonstrates the propriety of the lower guideline range. Such a release date would also

---

9. At least one court, albeit before *Addonizio,* has held that reliance on an incorrect understanding of the parole board's policy can require resentencing on a Rule 35 motion. *See United States v. Slutsky,* 514 F.2d 1222, 1226–27 (2d Cir.1975); *cf. United States v. Ruster,* 712 F.2d 409, 412–13 (9th Cir.1983) (requiring resentencing because of district court's reliance on incorrect statutory assumption of parole eligibility).

10. Because the district court has the authority, within these 120 days, to reduce a sentence whether "illegally imposed" or not, the district court certainly *may* take into account a new estimate of the guideline range and reduce the sentence.

11. Ideally the two should coalesce. We note that the question whether the relevant "fact" is a fact at all is the question that underlies the issue framed in *United States v. Dean, supra* at 240.

appear to thwart the district court's sentencing objectives.

Because the district court obviously declined to render a new sentence in light of an agreed new parole estimate, a requirement for a formal resentencing would be meaningless. Even without a formal resentencing, the ultimate sentencing decision reflected in the denial of the Rule 35 motion was based on a guideline estimate that accurately reflected the court's present expectations. Accordingly, there could be no violation here of due process even if, as a general matter, reliance on incorrect parole guidelines could violate due process and even if the guideline projection relied on originally by the district court were false. *See United States v. Jackson,* 649 F.2d 967, 981–82 (3d Cir.) (no need for resentencing where clear that disputed information was not basis for sentencing decision), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 574, 70 L.Ed.2d 479 (1981); *cf. Castillo-Roman,* 774 F.2d at 1284–85 (no need for resentencing where sentencing court stated that it would not rely on disputed information); *United States v. Allen,* 494 F.2d 1216, 1218 (3d Cir.) (same), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974).[12]

The judgment of the district court will be affirmed.

---

**12.** We distinguish this case from other cases in which courts of appeals have required district courts to reconsider sentences formally because the record did not reveal whether the challenged information was or was not false and whether the district court had relied upon the challenged information at sentencing. *See e.g., Moore,* 571 F.2d at 184–85 (remand required to determine whether court had relied on disputed information at sentencing and, if so, whether information was false); *United States v. Velasquez,* 748 F.2d at 974–75 (resentencing hearing required on Rule 35 motion when district court did not respond to challenge to statement in PSI at sentencing). While we concede a facial similarity (assuming of course that a parole guideline estimate is a "fact"), the circumstances of this case reveal the district court's perceptions with unmistakable clarity: whatever the likely alterations in the guideline projection, the district court was satisfied with its sentence and was not disposed to change it.

Furthermore, even if a projection of the Commission's guideline choice is a fact, it is not a fact that a district court can know with certainty. In contrast to other "facts," therefore, a district court can never assure that its sentence will be consistent with this fact without exceeding the limits of its authority delineated in *Addonizio.* To require a district court formally to reconsider its sentence merely because some doubt is thrown on the guideline estimate used at sentencing would be unnecessarily burdensome.