USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 94-2067 UNITED STATES OF AMERICA, Appellee, v. DONATO F. ANGIULO, Defendant, Appellant. _________________________ No. 94-2068 UNITED STATES OF AMERICA, Appellee, v. FRANCESCO F. ANGIULO, Defendant, Appellant. _________________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ _________________________ Anthony M. Cardinale for appellants. ____________________ James C. Rehnquist, Assistant United States Attorney, with ___________________ whom Donald K. Stern, United States Attorney, and Ernest S. ________________ _________ Dinisco, Assistant United States Attorney, were on brief, for the _______ United States. _________________________ June 15, 1995 _________________________ SELYA, Circuit Judge. This procedural motley requires SELYA, Circuit Judge. _____________ that we explore the interstices of sentence-related criminal rules that predate the inauguration of the federal sentencing guidelines, and are in that sense relics of a bygone era.1 Having completed the judicial equivalent of an archaeological dig, we deny the requested relief. I. BACKGROUND I. BACKGROUND In 1983, a federal grand jury indicted the appellants, Donato and Francesco Angiulo, along with several others, for activities allegedly undertaken in furtherance of the affairs of the Patriarca family of La Cosa Nostra. Though the indictment charged certain members of the enterprise with predicate offenses that included murder, it did not allege that Donato or Francesco Angiulo personally had committed any homicidal acts. Following a lengthy trial, a jury found the appellants guilty on a plethora of counts, including conspiracy to make extortionate extensions of credit, 18 U.S.C. 892(a), RICO conspiracy, id. 1962(d), ___ racketeering violations, id. 1962(c), and operation of an ___ illegal gambling business, id. 1955. ___ On April 3, 1986, the Hon. David S. Nelson, who had presided at the trial, convened a disposition hearing. The colloquy focused on the presentence investigative reports (PSI Reports). Among other things, both PSI Reports contained a statement, under the heading "prosecution version," to the effect  ____________________ 1We set forth in an appendix hereto the text of the relevant procedural rules as they stood on the date of sentencing (April 3, 1986). 2 that the enterprise with which the appellants were affiliated  the Patriarca family engaged in "crimes, including murder, as a matter of duty," in order to advance familial interests. There followed a compendium of felonies, including four murders and two unconsummated murder conspiracies, allegedly committed by the enterprise. Elliot Weinstein, Francesco Angiulo's attorney, took umbrage at that account. He stated in part: In support of my objection and request to strike . . . I indicate that nowhere during the proceedings in the case was there any evidence or suggestion that my client was involved in acts of murder, conspiracies to murder or shared in any intent or desires for the murder of any person at all. The specifically named victims in the pre- sentence report have no relationship whatsoever to my client and indeed during the course of the proceedings the government stated to the Court at several sidebar discussions and the Court indeed instructed the jury that evidence as to murders was not being admitted against Francesco Angiulo . . . . Robert Sheketoff, Donato Angiulo's lawyer, joined in the objection. He termed the recital "misleading" and added: My client was not charged with any predicate acts involving murder. And I think it is severely prejudicial the way they have drafted this and it is not clear from the report I would suggest either in the offense section or in any point in the report that, in fact, he was not charged, that there is an affirmative statement that he was not charged with any predicate acts of the verdict. Judge Nelson overruled these objections and left intact the references to the multiple murders. He proceeded to sentence both Angiulos to lengthy terms of immurement. The brothers appealed their convictions on other grounds, but eschewed any 3 further challenge to the PSI Reports. Their appeals were unavailing. See United States v. Angiulo, 897 F.2d 1169 (1st ___ _____________ _______ Cir.), cert. denied, 498 U.S. 845 (1990). _____ ______ On December 18, 1990, the appellants filed substantially identical motions for sentence reduction in the district court. They served these motions within 120 days of the Supreme Court's denial of certiorari (which occurred on October 1, 1990). The motions invoked former Criminal Rule 35(b) and spotlighted a purported disparity between the sentences appellants received and the sentences appellants would have received under the newly minted federal sentencing guidelines. The government filed objections to the motions and subsequently served a detailed opposition. Toward the end of 1991, the appellants, acting pro se, ___ __ each filed an undated "Rule 35 Reply" that bemoaned the adverse parole-related effects of the references to murder in the PSI Reports. These pleadings raised, for the first time, the charge that Judge Nelson had violated Fed. R. Crim. P. 32(c)(3)(D) in the course of imposing sentence. On January 24, 1992, the appellants, through new counsel, each filed in the district court a pleading entitled "Appeal Pursuant to 28 C.F.R. 542.15 and/or Motion Pursuant to Rule 32(c)(3)(D)." These pleadings described the anticipated adverse effects of the murder references contained in the PSI Reports, and sought the expungement of those references. In each instance, the clerk of court docketed the ___________________________________________________ pleading as a separate motion. The contents are consistent with ______________________________ 4 that characterization: each pleading clarified that "[t]he alternative and additional remedy [each appellant] seeks pursuant to Fed. R. Crim. P. 32(c)(3)(D) is simply another more expedient manner of effecting the relief he has previously sought administratively."2 These pleadings adopted the defendants' earlier Rule 35(b) motions by reference but cautioned that the new initiatives should be viewed separate and apart therefrom "as an effort to implement the Rule 32 requests [that each] defendant made at the time of his sentencing." Matters remained dormant for a spell, presumably because Judge Nelson assumed senior status. Eventually, the Hon. William G. Young stepped into the void. On April 25, 1994, Judge Young denied the appellants' Rule 35(b) motions, concluding that the sentences imposed by Judge Nelson were "entirely justified and necessary" to vindicate important public policy concerns. United States v. Angiulo, 852 F. Supp. 54, 62 (D. Mass. 1994). _____________ _______ The Angiulos did not prosecute appeals from the denial of their Rule 35(b) motions. On May 31, 1994, the appellants filed a written request asking Judge Young to hold a "status conference regarding defendants' motions pursuant to Rule 32(c)(3)(D)." Although the record is tenebrous as to whether such a conference materialized, the request sufficed to bring the Rule 32 motions to the  ____________________ 2The regulation cited in the January 24 pleadings describes the procedure for administrative appeals within the Bureau of Prisons, but makes no mention of judicial review. See 28 C.F.R. ___ 542.15 (1994). 5 forefront. In an unpublished rescript dated September 12, 1994, Judge Young addressed those motions. He discerned no violation of Rule 32, finding that the objections proffered at the disposition hearing did not dispute the factual accuracy of the murder references. In the bargain, the court expressed doubt about the intrinsic merit of the objections, indicating that the statements contained in the PSI Reports were not misleading, and, moreover, were directly relevant to the sentencing determination. The appellants filed these timely appeals in the wake of the court's September 12 order. They seek either resentencing or, in the alternative, redaction of the PSI Reports to remove the murder references that they believe are hindering their chances to secure parole.  II. ANALYSIS II. ANALYSIS We start with bedrock. Although a district court's denial of a motion for sentence reduction under former Rule 35(b) is a final order, and, thus, an appealable event, see, e.g., ___ ____ United States v. McAndrews, 12 F.3d 273, 278 (1st Cir. 1993); see _____________ _________ ___ also United States v. Distasio, 820 F.2d 20, 24 (1st Cir. 1987) ____ _____________ ________ (holding the grant of a sentence reduction to be an appealable order), the present appeals are not of that persuasion. The district court denied the Rule 35(b) motion by order entered April 25, 1994, and no action was taken within the applicable appeal period. See Fed. R. App. P. 4(b) (providing that such ___ appeals must be taken within 10 days from date of entry of the order); see also United States v. Morrillo, 8 F.3d 864, 867 (1st ___ ____ _____________ ________ 6 Cir. 1994) (explaining that the time limits for taking appeals in criminal cases are "mandatory and jurisdictional"). Hence, the district court's Rule 35(b) determinations are not susceptible to review at this late date.3 Refined to bare essence, the defendants' appeals must stand or fall based on Fed. R. Crim. P. 32. We think they fall. Criminal Rule 32 provides no independent foundation for a postsentence motion to correct a PSI Report and, under the circumstances that obtain here, the appellants' motions cannot properly be recharacterized as timely motions under Rule 35. We explain briefly. We frequently have recognized the importance of Rule 32 and we have emphasized its requirement of literal compliance. See, e.g., United States v. Hanono-Surujun, 914 F.2d 15, 18-20 ___ ____ _____________ ______________ (1st Cir. 1990); United States v. Jimenez-Rivera, 842 F.2d 545, ______________ ______________ 550-51 (1st Cir.), cert. denied, 487 U.S. 1223 (1988). These _____ ______ attributes, however, do not create jurisdiction for a court to entertain postsentence motions alleging violations of Rule 32. In the absence of either an enabling statute or language in the  ____________________ 3In any event, former Rule 35(b) conferred virtually unfettered discretion on sentencing courts. See, e.g., United ___ ____ ______ States v. DeCologero, 821 F.2d 39, 41 (1st Cir. 1987) (discussing ______ __________ breadth of district court's discretion). Thus, it seems highly unlikely that Judge Young's refusal to grant relief thereunder could successfully have been challenged,especially given the obvious inadequacy of the motions' linchpin assertion. See ___ United States v. Twomey, 845 F.2d 1132, 1134-35 (1st Cir. 1988) _____________ ______ (upholding denial of Rule 35(b) motion and explaining that district courts have no obligation to harmonize sentences for pre-guidelines offenses with sentencing results produced by application of the guidelines). 7 rule's text that could conceivably be read as authorizing such jurisdiction, we hold that Rule 32, in and of itself, does not confer district court jurisdiction to conduct a postsentence review. Accord United States v. Engs, 884 F.2d 894, 895 (5th ______ _____________ ____ Cir. 1989) (agreeing that "no postsentence jurisdiction exists based solely on Rule 32(c)(3)(D)"); United States v. Giaimo, 880 _____________ ______ F.2d 1561, 1563 (2d Cir. 1989) (holding that "Rule 32, standing alone, does not give a district court jurisdiction to correct inaccuracies in a PSI report after a defendant has been sentenced"); United States v. Sarduy, 838 F.2d 157, 158 (6th Cir. _____________ ______ 1988); United States v. Peloso, 824 F.2d 914, 915 (11th Cir. _____________ ______ 1987); United States v. Williams, 618 F. Supp. 1419, 1420 (E.D. _____________ ________ Va. 1985), aff'd, 785 F.2d 306 (4th Cir. 1986); United States v. _____ _____________ Sheela, 667 F. Supp. 724, 726 (D. Or. 1987); United States v. ______ _____________ Burkhead, 567 F. Supp. 1425, 1427-28 (W.D. Mo. 1983).4 ________ Appellants try to locate a serviceable vehicle for their Rule 32 claims by characterizing their supplementary motions as ones that were brought under Rule 35. We, and other courts, sometimes have allowed violations of Rule 32 to be addressed in timely Rule 35 motions. See, e.g., United States v. ___ ____ _____________ Feigenbaum, 962 F.2d 230, 232-33 (2d Cir. 1992); United States v. __________ _____________ Smith, 844 F.2d 203, 207 (5th Cir. 1988); Sarduy, 838 F.2d at _____ ______ 158; United States v. Katzin, 824 F.2d 234, 237-38 (3d Cir. ______________ ______  ____________________ 4At least one court has reached an opposite conclusion. See ___ United States v. Hart, 922 F.2d 613, 615 (10th Cir. 1990). With _____________ ____ respect, we regard Hart as wrongly decided and we decline to ____ follow it. 8 1987); Peloso, 824 F.2d at 915; United States v. Santamaria, 788 ______ _____________ __________ F.2d 824, 828-29 (1st Cir. 1986). This avenue of review, however, is properly seen as founded on former Rule 35(a), and more particularly, on the prong of former Rule 35(a) that permits a district court to "correct a sentence imposed in an illegal manner." Like motions arising under former Rule 35(b), such Rule 35(a) motions must be filed within 120 days next following the entry of final judgment.5 In view of this legal mise-en-scene, the appellants' attempt to anchor jurisdiction on former Rule 35 suffers from several infirmities which, taken together, prove fatal to their endeavor. First, jurisdiction to review the alleged violations of Rule 32 cannot be based on Rule 35(b) in the circumstances of this case. While the district court permissibly could have considered any Rule 32 irregularities when it decided the Rule 35(b) motions for discretionary sentence reduction in April of 1994, it had no obligation to do so, and, in all events, the Angiulos did not take timely appeals from the denial of these motions. Second, the circumstances do not permit jurisdiction properly to be premised on former Rule 35(a). The appellants  ____________________ 5Although former Rule 35(a) also allowed a district court to correct an "illegal sentence at any time," that remedy was not available to address a Rule 32 violation because "illegal sentences" were limited to those that "`exceed the relevant statutory maximum limits or violate double jeopardy or are ambiguous or internally contradictory.'" Katzin, 824 F.2d at 237 ______ (quoting 8A James W. Moore, Moore's Federal Practice 35.03[2], ________________________ at 35-36 (2d ed. 1987)). 9 neither cited that rule to Judge Young nor attempted to base jurisdiction on it; and, as we have said, "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union, ______________________________________________________ Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. ____________ ______________________ 1992). This principle is fully applicable in criminal cases. See, e.g., United States v. Slade, 980 F.2d 27, 30 (1st Cir. ___ ____ _____________ _____ 1992). Furthermore, in order to use former Rule 35(a) as a vehicle to review ostensible Rule 32 violations, appellants would have needed to file their motions within 120 days of the Supreme Court's denial of certiorari. The initial Rule 35(b) motions were docketed within that time span, but the first pleadings that mentioned Rule 32 were not served until well after the 120-day period expired. Even if these subsequent attempts somehow could be deemed to implicate Rule 35(a), the failure to comply with the 120-day deadline would defeat jurisdiction.6 See United States ___ _____________ v. Ames, 743 F.2d 46, 48 (1st Cir. 1984) (noting that the time ____ limitations specified in former Rule 35 are mandatory and  ____________________ 6It is often assumed that inaccuracies in a PSI Report may form the basis for a petition under 18 U.S.C. 2255. See United ___ ______ States v. Gattas, 862 F.2d 1432, 1433-34 & n.4 (10th Cir. 1988); ______ ______ United States v. Mosquera, 845 F.2d 1122, 1124 n.1 (1st Cir. ______________ ________ 1988). In addition, courts have suggested that such relief may be obtainable pursuant to 18 U.S.C. 2241. See Peloso, 824 F.2d ___ ______ at 915; United States v. Daniels, 737 F. Supp. 111, 114 (D. Me. _____________ _______ 1990). The appellants have not asserted jurisdiction under either of those statutes, and they have expressly disclaimed reliance on section 2255. Thus, we take no view of the appropriateness vel non of any such potential remedies. ___ ___ 10 jurisdictional), cert. denied, 469 U.S. 1165 (1985). _____ ______ III. CONCLUSION III. CONCLUSION In this instance, all roads lead to Rome. On one hand, the appellants did not perfect timely appeals from the district court's denial of their Rule 35(b) motions, and, hence, those motions are dead letters. On the other hand, insofar as the appellants' postsentence motions rest on Rule 32, simpliciter, the district court lacked jurisdiction to consider them.7 Affirmed. Affirmed. ________  ____________________ 7Of course, the district court should simply have denied the Rule 32 motions for lack of jurisdiction, rather than reaching the merits of the alleged Rule 32 violations. Accordingly, its comments, though insightful, should not be accorded binding force or effect if further proceedings eventuate. 11 APPENDIX APPENDIX Former Criminal Rule 35, which applies to offenses committed prior to November 1, 1987, provides in pertinent part: (a) Correction of Sentence. The court (a) Correction of Sentence. may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. (b) Reduction of Sentence. A motion to (b) Reduction of Sentence. reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. . . . Fed. R. Crim. P. 35. Criminal Rule 32(c)(3)(D), as applicable to offenses committed prior to November 1, 1987, provides that: If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission. Fed. R. Crim. P. 32(c)(3)(D). 12