**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3636

_____

UNITED STATES OF AMERICA

v.

ROBERT P. GRIFFITHS,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2:09-cr-00506)
District Judge:  Hon. Susan D. Wigenton

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 15, 2012

Before:  RENDELL, FUENTES and CHAGARES, Circuit Judges.

(Opinion Filed:  November 20, 2012)

_____

OPINION

_____

CHAGARES, Circuit Judge.

Robert Griffiths appeals the sentence of fifty months imposed on him by the

District Court for engaging in a kickback and fraud conspiracy and a money laundering

conspiracy, as well as for obstructing an official proceeding.  Griffiths argues that his

sentence was procedurally unreasonable because it was based on a clearly erroneous fact, because the District Court failed to follow the sentencing procedure required by this Court, and because the District Court failed to sentence him in a comprehensible manner. Moreover, Griffiths alleges that the District Court's sentence was substantively unreasonable. For the following reasons, we will vacate the sentence imposed by the District Court and remand for resentencing.

## I.

We write solely for the parties' benefit and thus recite only the facts essential to our disposition. On July 6, 2009, Griffiths pleaded guilty to having conspired to defraud the United States Environmental Protection Agency ("EPA"), in violation of 18 U.S.C. § 371 (count 1). He also pleaded guilty to a violation of 18 U.S.C. § 1956(h) for conspiring to transfer funds through a place outside of the United States with the intent to commit wire fraud (18 U.S.C. § 1343) (count 2). Finally, he pleaded guilty to obstructing, influencing, and impeding an official proceeding before the United States Securities and Exchange Commission, in violation of 18 U.S.C. § 1512(c)(2) (count 3).

Griffiths's conspiracy involved bid steering and kickbacks surrounding environmental clean-up projects at Federal Creosote in Manville, New Jersey and Diamond Alkali in Newark, New Jersey. A prime contractor, Sevenson Environmental Services, Inc. ("Sevenson"), was hired at both sites, and Sevenson in turn hired subcontractors to provide the goods and services necessary for the remediation. One such subcontractor was Bennett Environmental, Inc. ("BEI"), the Canadian corporation where Griffiths worked. BEI would invoice Sevenson for the goods and services it provided,

2

and Sevenson passed those charges on to the EPA and to Tierra Solutions, Inc. ("Tierra"), which was designated by the EPA as financially responsible for remediation at Diamond Alkali. Subcontractors — including BEI — would pay kickbacks to a Sevenson employee in return for help in winning the subcontract award, and Sevenson would then charge inflated prices to the EPA. Through Griffiths and others, Sevenson and BEI also engaged in bid steering. Griffiths owned a shell company where he hid the kickback payments he received as part of the scheme. The losses to the EPA from the fraud, calculated in the Presentence Investigation Report, totaled at least $4,644,378.56.

Other individuals and companies participated in the scheme and were convicted on similar charges; however, because "[e]ach subcontractor engaged in its own conspiracy," "none of the subcontractors were co-conspirators with each other." Gov't Br. 7.

Before sentencing, the Government filed a motion for downward departure for substantial assistance to authorities, pursuant to U.S.S.G. § 5K1.1. Griffiths sent the District Court a compilation of numerous letters from family and friends, which stressed Griffiths's remorse for his crimes, his status as a single parent caring for a then-seven-year-old daughter, and his favorable personal qualities. Sentencing took place on September 12, 2011, and there the District Court acknowledged the letters of support, as well as the Government's § 5K1.1 motion, and the convictions and sentences of other individuals who had pleaded guilty before the District Court in connection with this scheme.

The District Court proceeded at sentencing in the following manner. First, it addressed the Government's U.S.S.G. § 5K1.1 motion. The District Court acknowledged

3

Griffiths's "significant and useful assistance to the Government," pointing out that the information given by Griffiths "was truthful, complete and reliable," and that Griffiths "went above and beyond, quite frankly, of where one would expect an individual to go when involved in an offense of this nature." Appendix ("App.") 115-16. Accordingly, the District Court indicated that it would grant the Government's request and depart downward. The District Court indicated that Griffiths had a level 31 offense level and a criminal history category of 1 before application of the downward departure. The District Court did not rule at that moment on the number of levels it would downwardly depart, but made clear that it was "mindful of obviously imposing a sentence that is commensurate with what also has been imposed as relates to other individuals, given their role in this particular scheme," as well as "unwarranted sentencing disparities" "nationally." Id. at 116. The District Court also acknowledged that the United States Sentencing Guidelines are advisory. Id. at 117.

The District Court then proceeded to the 18 U.S.C. § 3553(a) factors, which the court described as the stage "when I try to determine what's the appropriate amount for the Court to depart downward, how far the Court should depart downward, looking at the history and characteristics of you as an individual." App. 117. After explaining that Griffiths was a "point person" in the scheme, but also highlighting Griffiths's relationship with his daughter, his remorse, and his cooperation, the District Court indicated that it would grant "the greatest departure that I've given" in the cases related to the underlying conspiracy — that is, 8 levels. Id. Thus assigning Griffiths an offense level of 23, the District Court imposed a sentence of 50 months for each of the three counts of the

4

indictment, to run concurrently, followed by three years of supervised released for each count, also to run concurrently. Id. at 119-20. After reciting the requirements of probation, the court ordered joint and several restitution to the EPA in the amount of $4,644,378.56, as well as a $5,000 fine for each count of the indictment. Griffiths's counsel asked the District Court to clarify whether it had imposed a sentence of 50 or 15 months, and whether it had granted an 8-level departure because of the Government's motion or because of the § 3553(a) factors.[1] The District Court responded that the sentence imposed was 50 months, and that the District Court "did not indicate a 3553(a) variance." App. 124.

On appeal, Griffiths raises several issues about the District Court's sentencing procedure. In its response to Griffiths's opening brief, the Government was candid and corrected the District Court's assertion at the sentencing hearing that the greatest downward departure it had issued in cases related to the scheme underlying Griffiths's case was 8 levels. The Government clarified that the District Court "was mistaken that its greatest departure in these cases had been 8 levels, as it had granted Tejpar a 10-level departure." Gov't Br. 20 n.15 (citing United States v. Tejpar, No. 08-912 (D.N.J. Mar. 30, 2011), ECF No. 12). In his reply brief, Griffiths argued for the first time that the District Court based his sentence on clearly erroneous facts, and therefore violated his

---

[1] The transcript included in the Appendix appears to contain an error, indicating that the District Court asked for clarification on the number of levels of departure, which does not make sense. See App. 124 ( "THE COURT: Fifty. So your Honor, that I understand, your Honor has granted the Government's motion for an 8-level departure . . . .").

right to due process. We requested supplemental briefing from the Government on this issue.

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the procedural and substantive reasonableness of a district court's sentence for an abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). We "take up the procedural review first, looking to see that the district court has committed no significant error . . . ." United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008). "If the sentencing decision passes that first stage of review, we then, at stage two, consider its substantive reasonableness." Id. In the instant appeal, because we find procedural error in the sentence imposed on Griffiths, we do not proceed to his argument that his sentence is substantively unreasonable.

To determine whether a sentence is procedurally reasonable, we "ensur[e] that the district court committed no significant procedural error . . . ." United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009). Moreover, "[w]e exercise plenary review over alleged constitutional errors." United States v. Tyler, 281 F.3d 84, 94 (3d Cir. 2002). However, "constitutional challenges not raised before the district court are subject to plain error review." United States v. Lopez, 650 F.3d 952, 959 (3d Cir. 2011).

Griffiths argues that the District Court based his sentence on a clearly erroneous fact — namely, that the greatest downward departure in a related case was 8 levels, when in fact it was 10 levels. The United States Supreme Court has held that "selecting a sentence based on clearly erroneous facts" constitutes a "significant procedural error." Gall v. United States, 552 U.S. 38, 51 (2007). In Townsend v. Burke, the Supreme Court ruled that a sentence imposed "on the basis of assumptions concerning [the defendant's] criminal record which were materially untrue, . . . . is inconsistent with due process of law." 334 U.S. 736, 741 (1948). Our case law has underscored that holding, elucidating that "[i]n Townsend v. Burke . . . the Supreme Court made it clear that a sentence cannot be predicated on false information." Moore v. United States, 571 F.2d 179, 183 (3d Cir. 1978). Moreover, we have elsewhere held that "due process may require resentencing when the information on which the sentencing court may have relied in a PSI is mistaken or unreliable." United States v. Katzin, 824 F.2d 234, 240 (3d Cir. 1987).

In its supplemental brief, the Government responds that Griffiths waived this argument by failing to raise it in his opening brief. Indeed, "[i]t is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). However, as the Government points out, this Court considers three factors in determining whether extraordinary circumstances exist such that a failure to raise an issue in an opening brief does not waive the argument: "whether there is some excuse for the failure to raise the issue in the opening brief; how far the opposing party would be prejudiced;

and whether failing to consider the argument would lead to a miscarriage of justice or undermine confidence in the judicial system." United States v. Albertson, 645 F.3d 191, 195 (3d Cir. 2011).

Griffiths states that he did not know to which defendant the District Court was referring when it identified the greatest downward departure as 8 levels. Moreover, as Griffiths argues, the extent of downward departures granted in other cases is not information readily available to counsel, since transcripts of sentencing hearings — the only place where departure determinations are spelled out — are not available on PACER (whereas they are easily accessed by the Government). Accordingly, Griffiths has offered an excuse for his failure to raise this issue in the opening brief. Moreover, the Government does not argue that it would be prejudiced by this Court's consideration of the issue, since it received the opportunity to press its waiver argument in its supplemental brief. See Gov't Supp. Br. 3. Finally, a failure to consider Griffiths's argument would undermine confidence in our judicial system, as it would require that we ignore the District Court's reliance on a clearly erroneous fact that, as explained below, likely did affect the sentence imposed on Griffiths. Thus, we do not consider the issue waived in this case.

The District Court made clear several times at the sentencing hearing that the sentence to be imposed on Griffiths would be determined in relation to the sentences imposed on other defendants in related cases. See, e.g., App. 116 ("[I]t is important for all counsel to know as well as Mr. Griffiths that the Court has to be mindful of obviously imposing a sentence that is commensurate with what also has been imposed as relates to

8

other individuals, given their role in this particular scheme."). Furthermore, the District Court noted that "none of [the other sentenced individuals] had obviously that higher offense level as [Griffiths]," which led the sentencing court to "depart downward 8 levels" — "the greatest level" of departure that the District Court believed it had applied. This leads us to conclude that, had the District Court been aware that the greatest departure granted was actually 10 levels (or 13), it likely would have calculated Griffiths's sentence differently.[2] Accordingly, we hold that, under either plenary or plain-error review, resentencing is appropriate because the sentence assigned to Griffiths was based on a clearly erroneous fact. We also laud the Government for pointing out the District Court's factual error, as it underscores the profound interest — shared by all parties — in fair disposition and just sentencing.

Finally, Griffiths also argues that his sentence is procedurally unreasonable because the District Court did not follow the procedure outlined by this Court in United States v. Gunter, 462 F.3d 237 (3d Cir. 2006). In remanding the instant case for resentencing, we remind the District Court that Gunter requires a sentencing court to: (1) rule formally on any departure motions, (2) state how that departure affects a defendant's advisory Guidelines calculation (taking this Court's pre-Booker case law into account), and (3) exercise its discretion by separately considering the relevant § 3553(a) factors. Id. at 247. Importantly, we have also held that sentencing courts must make those

_____

[2] Griffiths also argues that, although the court in Tejpar articulated that it was granting a 10-level departure, it effectively granted Tejpar a 13-level departure in offense level by imposing probation without confinement. We leave it to the District Court to clarify the departure afforded in Tejpar's case, if it remains relevant on remand.

determinations in sequential order.  See, e.g.,  United States v. Friedman, 658 F.3d 342, 361 (3d Cir. 2011) ("Departure and variance motions logically cannot be determined until the district court knows what the Guidelines calculation is.").  We assume the District Court will remain mindful of this required procedure at the resentencing hearing.

IV.

For the foregoing reasons, we will vacate the District Court's judgment of sentence and remand for resentencing.